103 P.3d 1219 (2005)
STATE of Washington, Respondent,
v.
Erik Vincent BARNES, Petitioner.
No. 74408-4.
Supreme Court of Washington, En Banc.
Argued June 8, 2004.
Decided January 13, 2005.
Reconsideration Denied March 7, 2005.
*1220 Dana M. Lind, Nielsen Broman & Koch PLLC, Seattle, for Petitioner.
Seth Aaron Fine, Snohomish Co. Pros. Ofc., Everett, for Respondent.
MADSEN, J.
Erik Barnes challenges a firearm enhancement to his sentence for possession of a controlled substance. Barnes contends that the jury instructions relating to the firearm enhancement improperly omitted a knowledge requirement and thus relieved the State of proving the enhancement beyond a reasonable doubt. We conclude that the jury instruction was proper and affirm the Court of Appeals.

FACTS
On February 11, 2000, Trooper Anderson responded to the scene of an accident. When he arrived Barnes was standing next to a vehicle that had been driven into a guardrail. Learning from aid personnel that Barnes had refused aid twice and observing Barnes's demeanor and appearance, Anderson suspected that Barnes had been driving under the influence of drugs and took him into custody.
During a search incident to arrest, Trooper Stoeckle found an unloaded handgun under the driver's seat. Because there were holes in the back deck of the car, Stoeckle was also able to see into the trunk and observe what appeared to be a rifle case.
After advising Barnes of his rights, Anderson asked Barnes if he had taken *1221 drugs within the past 24 hours. Barnes answered that he had taken amphetamine-type drugs about 16 hours previously. Asked about the handgun, Barnes claimed that he did not own the gun and did not know it was in the car. He admitted, however, that he owned the rifle and that he knew the rifle was in the trunk.
The police later obtained a warrant to search the trunk where they found a rifle, along with a bag containing ammunition for the rifle, as well as traveler's checks, a variety of foreign currency, coins, jewelry, and two containers of methamphetamine. No ammunition for the handgun was found. The traveler's checks led to Pamela Hagerman, who later identified several items as property taken in a burglary in December 1999.
Barnes was charged with (1) possession of a controlled substance with intent to manufacture or deliver, (2) unlawful possession of a firearm in the first degree for the handgun, (3) unlawful possession of a firearm in the first degree for the rifle, (4) driving under the influence, and (5) possession of stolen property in the first degree.[1] The State also alleged that Barnes was armed with a firearm during commission of the crime of possession of a controlled substance, Count 1.
The "to convict" instructions given on the two counts of unlawful possession of a firearm did not include a knowledge element. As to the firearm enhancement, jury instruction 16 stated:
For purposes of a special verdict, the State must prove beyond a reasonable doubt that the defendant was armed with a firearm at the time of the commission of the crime in Count 1.
A "firearm" is a weapon or device from which a projectile may be fired by an explosive such as gunpowder.
Clerk's Papers (CP) at 48. Jury instruction 17 stated:
"Armed" means the firearm is readily available and accessible to one's use for offensive or defensive purposes. A firearm need not be loaded to be readily available and accessible.
CP at 49.
The jury found Barnes guilty of the remaining counts and returned a special verdict finding that Barnes was armed with a firearm when he committed the crime of possession of a controlled substance. Barnes appealed, raising several issues, including a claim that instruction 17 and the special verdict form were improper because they failed to inform the jury that knowledge of the presence of a firearm is required for a firearm enhancement.
In an unpublished opinion, the Court of Appeals reversed the conviction relating to possession of the handgun, based on the State's concession that the jury instructions as to unlawful possession of a handgun were erroneous and that the error was not harmless. State v. Barnes, 117 Wash.App. 1070, 2003 WL 21691978 (2003). As to the firearm enhancement, the court found no error in the jury instructions. The court held that knowledge of the presence of the firearm is not required under the enhancement statute.
Barnes filed a petition for review challenging the court's decision regarding the firearm enhancement instructions.

ANALYSIS
Barnes argues that jury instruction 17 and the special verdict form were improper because they did not explicitly inform the jury that knowledge of the presence of a firearm is required to prove a firearm allegation.
Alleged errors of law in jury instructions are reviewed de novo. Blaney v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. No. 160, 151 Wash.2d 203, 210, 87 P.3d 757 (2004). Jury instructions are proper when they permit the parties to argue their theories of the case, do not mislead the jury, and properly inform the jury of the applicable law. Id.
Under former RCW 9.94A.125 (1983)[2]:

*1222 In a criminal case wherein there has been a special allegation and evidence establishing that the accused or an accomplice was armed with a deadly weapon at the time of the commission of the crime, ... if a jury trial is had, the jury shall, if it find[s] the defendant guilty, also find a special verdict as to whether or not the defendant or an accomplice was armed with a deadly weapon at the time of the commission of the crime.
....The following instruments are included in the term deadly weapon: ... pistol, revolver, or any other firearm....
The statute requires the State to prove that the defendant, or an accomplice, was armed with a deadly weapon at the time of the commission of the crime. An affirmative finding on the special verdict results in an increase of the defendant's sentence pursuant to former RCW 9.94A.310(3) (2000).[3]
A person is "armed" for the purpose of a deadly weapon enhancement if a weapon is easily accessible and readily available for use, either for offensive or defensive purposes. State v. Valdobinos, 122 Wash.2d 270, 282, 858 P.2d 199 (1993). The mere presence of a deadly weapon at the crime scene is insufficient to show that the defendant is "armed." State v. Schelin, 147 Wash.2d 562, 563-64, 55 P.3d 632 (2002); State v. Willis, No. 74561-7, ___ Wash.2d ___, 103 P.3d 1213, 2005 WL 20516 (Wash. Jan. 6, 2005). There must be a nexus between the defendant, the crime, and the deadly weapon in order to find that the defendant was "armed" under the deadly weapon enhancement statute. Schelin, 147 Wash.2d at 567-70, 575, 55 P.3d 632. In Willis, heard as a companion to this case, we held that failure to include express "nexus" language in jury instructions relating to a deadly weapon enhancement is not reversible error. Willis, ___ Wash.2d at ___, 103 P.3d at 1217, 2005 WL 20516,
Reading Valdobinos, Schelin, and Willis together, we conclude that in order to meet its burden on a firearm allegation, the State must establish that the defendant was within the proximity of an easily and readily available firearm for offensive or defensive purposes, and that a nexus exists between the defendant, the crime, and the firearm. Jury instructions need not, however, expressly contain "nexus" language.[4]
Barnes argues, though, that in addition to a "nexus" requirement, the State must prove that he had knowledge of the presence of the firearm in order to prove the deadly weapon allegation. In arguing that such knowledge is required, Barnes relies on State v. Anderson, 141 Wash.2d 357, 5 P.3d 1247 (2000), where we held that knowledge is an element of unlawful possession of a firearm in the second degree and reversed the conviction on the grounds that the jury instruction omitted the knowledge element. Anderson, 141 Wash.2d at 367, 5 P.3d 1247.
In reaching our conclusion in Anderson, we noted first that RCW 9.41.040(1) is silent with regard to any mental element. Anderson, 141 Wash.2d at 361-66, 5 P.3d 1247. We then looked to legislative history to determine whether the legislature intended to create a strict liability crime. We pointed out that the legislature's failure to provide in the statute for the affirmative defense of unwitting conduct or to expressly eliminate lack of knowledge as a defense weighed against a conclusion that the legislature intended unlawful possession of a firearm to be a strict liability crime. Id. at 362-63, 5 P.3d 1247. Bearing in mind the principle that offenses with no mental element are generally disfavored, we considered the statute under a multifactor analysis for determining whether a statute defines a strict liability crime. Anderson, 141 Wash.2d at 363, 5 P.3d 1247; see State v. Bash, 130 Wash.2d 594, 605-06, 925 P.2d 978 (1996).[5] *1223 We concluded that the legislature intended to require a mental element. Anderson, 141 Wash.2d at 363-66, 5 P.3d 1247. Accordingly, we held that the unlawful possession statute contained an implied knowledge element and reversed Anderson's conviction.
Barnes argues that, as with the crime of unlawful possession of a firearm, the legislature did not intend to impose strict liability for being "armed with a deadly weapon." Barnes's reliance on Anderson is misplaced. In Anderson we analyzed a criminal statute, unlawful possession of a firearm, to determine whether the legislature intended to require a mental element to sustain a criminal conviction. Here, the issue is whether the presence of a firearm will increase the amount of punishment for crimes defined elsewhere. A firearm enhancement presupposes that the defendant's behavior already constitutes a crime, such as possession of methamphetamine with intent to deliver as in this case.[6]
Barnes argues, though, that a knowledge requirement must be implied in former RCW 9.94A.310 because "[t]he underlying rationale [for the deadly weapon enhancement] can apply only where there is a possibility the defendant would use the weapon." State v. Johnson, 94 Wash.App. 882, 895-96, 974 P.2d 855 (1999) (emphasis in original); see State v. Woolfolk, 95 Wash.App. 541, 550-51, 977 P.2d 1 (1999) ("it is the potential use of guns that is at the heart of the firearm enhancement"). While it is true that lack of knowledge of the presence of a firearm is relevant is assessing whether a defendant will use a gun, that does not mean a requirement that knowledge be proved must be implied in the firearm enhancement statute.
Woolfolk is instructive. There, the State moved in limine to prohibit the defendant from arguing that knowledge is an "essential element" of being armed with a deadly weapon. Id. at 545, 977 P.2d 1. The trial court granted the motion, reasoning that because knowledge is not required for a finding that a defendant is "armed with a deadly weapon," it would be improper to allow the defendant to argue that he was unaware of the presence of the weapon. The trial court noted that an accomplice may be convicted of being armed with a deadly weapon where the principal is armed, even if the accomplice has no knowledge of a weapon. It followed, according to the court, that one could be "armed" for purposes of the firearm enhancement regardless of whether one had knowledge of the presence of the weapon.[7]Id.
*1224 The Court of Appeals reversed, explaining that if a jury believes that the defendant was unaware of the presence of a firearm, then, even though the weapon may be physically within easy access, the jury is entitled to conclude that the weapon is not available for use in the commission of the crime. Id. at 550, 977 P.2d 1. The defendant must be afforded latitude to argue his interpretation of the evidence, including his lack of knowledge and the inferences therefrom. Id. at 549-550, 977 P.2d 1. The Court of Appeals expressly stated that it was not making knowledge of the gun an "element" of the firearm enhancement statute. Id. at 550, 977 P.2d 1.
We agree with the reasoning in Woolfolk. In Willis, we held that while the State must establish a nexus between the defendant, the crime, and the weapon in order to meet its burden to prove a firearm allegation, "nexus" language need not be expressly included in firearm enhancement instructions. Here, we conclude that while knowledge may be a factor for the jury to consider in deciding whether there is a connection between the defendant, the crime, and the weapon, it is not a requirement that must be contained in jury instructions relating to a firearm enhancement.
Barnes does not claim he was prevented from arguing to the jury that if it believed he did not know the handgun was under the driver's seat, the jury should find that he was not "armed" because the weapon was not accessible for use in the commission of the crime charged.
Finally, as explained, Barnes's conviction of unlawful possession of a firearm, the handgun, was reversed by the Court of Appeals. This case must be remanded for further proceedings on that count. Barnes argues that if he is acquitted of unlawful possession of a firearm on remand, it makes no sense that his sentence be enhanced for being "armed" with a weapon that he did not knowingly possess.
Initially, whether Barnes will be acquitted is a matter of speculation. Moreover, Barnes has not argued that the evidence here is insufficient to establish a nexus between himself, the crime, and the weapon.
We hold that the jury instructions given were proper.

CONCLUSION
Knowledge of the presence of a firearm is not a requirement of a deadly weapon allegation and need not be included in a firearm enhancement jury instruction. We affirm the Court of Appeals.
JOHNSON, IRELAND, BRIDGE, OWENS and FAIRHURST, JJ., concur.
SANDERS, J. (dissenting).
The majority cites all the right cases but comes to the wrong conclusion. In a constructive possession case, there can be no nexus between the firearm and the accused, or between the firearm and the crime, without knowledge that one "possessed" a firearm.
The entire purpose of recognizing the nexus requirement in State v. Schelin, 147 Wash.2d 562, 55 P.3d 632 (2002), was to guarantee that a sentence would not be enhanced for innocent conduct. Id. at 570, 55 P.3d 632. As acknowledged by the majority, the mere presence of a deadly weapon at the crime scene is insufficient to show that a defendant is "armed," let alone that there is a "nexus" between the defendant, the crime, and the weapon. Majority at ___ (citing Schelin, 147 Wash.2d at 563-64, 55 P.3d 632).
As I stated in my dissent in the companion case State v. Willis, No. 74561-7, ___ Wash.2d ___, 103 P.3d 1213, 2005 WL 20516 (Wash. Jan. 6, 2005), a nexus is a connection between the gun, the defendant, and the crime. There can be no "connection" between these if the defendant is unaware of the weapon. Further, even the post-Willis definition of "armed," decoupled from the nexus requirement, mandates that a weapon be "readily available for use."[1] The majority *1225 does not explain how a weapon of which the defendant is not aware is available to the defendant at all, let alone for use in the crime. Under the majority's rationale, a defendant who possesses drugs in a car owned and driven by someone else could have her sentence enhanced if the driver keeps a weapon in the glove box, even if the passenger had no reason to know of the weapon.
Indeed, the cases cited by the majority belie its conclusions. The hypothetical above is drawn directly from State v. Woolfolk, 95 Wash.App. 541, 550, 977 P.2d 1 (1999), which the majority cites as "instructive." Majority at 1223. The Woolfolk court, writing three years before the Schelin court required a "nexus" between the defendant, the weapon, and the crime, noted:
Although the gun may be within reach of the passenger, it goes against common sense to say that the passenger is armed. Because the passenger does not know it exists, he cannot use the gun. And it is the potential use of guns that is at the heart of the firearm enhancement.
Woolfolk, 95 Wash.App. at 550, 977 P.2d 1.
As the majority states, the Court of Appeals explicitly limited its holding to permit a defendant to argue to the jury that the defendant's lack of knowledge of a firearm could permit a jury to find that the defendant was not armed, id. at 550-551, 977 P.2d 1. But whether the jury should have been instructed that it must find that the defendant knew of the weapon was not at issue in that case. Id. at 542, 547, 977 P.2d 1.[2] Woolfolk did not directly challenge the instructions regarding the deadly weapon enhancement, and the Court of Appeals properly cabined its holding to only the issue before it.[3]
While the majority claims to "agree with the reasoning in Woolfolk," majority at 1224, aside from describing Woolfolk's procedural history and holding, it does not actually analyze that reasoning. Woolfolk reasoned: "Because the passenger does not know [the weapon] exists, he cannot use the gun. And it is the potential use of guns that is at the heart of the firearm enhancement." Woolfolk, 95 Wash.App. at 550, 977 P.2d 1.
The majority even quotes State v. Johnson, 94 Wash.App. 882, 974 P.2d 855 (1999), albeit only in passing. Majority at 1223. The majority acknowledges that "`[t]he underlying rationale [for the deadly weapon enhancement] can apply only where there is a possibility the defendant would use the weapon.'" Id. (quoting Johnson, 94 Wash.App. at 896, 974 P.2d 855).[4]
Obviously, a defendant cannot use a weapon she does not know is there. But rather than admit that the "underlying rationale" for the weapon enhancement supports a knowledge requirement, the majority chooses merely to describe such knowledge as "relevant" in "assessing whether a defendant will use a gun." Majority at 1223.
Johnson and Woolfolk, far from supporting the majority, strongly support the proposition that the State be required to prove the defendant knew of the weapon in order for the State to show that the defendant was "armed." And, as discussed in both cases, the underlying rationale of the weapon enhancement is served only when the defendant knows of, and thus could possibly use, the weapon. Under the majority's holding, a *1226 defendant unaware of a weapon and thus unable to use a weapon could nevertheless be found to have been "armed" with the weapon.
The case that most clearly supports the requirement that the jury be instructed that they must find that the defendant knowingly possessed a weapon in order for a weapon enhancement to be applied is State v. McKim, 98 Wash.2d 111, 653 P.2d 1040 (1982). The issue in McKim was whether the jury had to be instructed that the defendant knew that an accomplice was armed in order for a weapon enhancement to be applied under the complicity statute.[5] The court held that "for the deadly weapon enhancement provision to apply to an unarmed codefendant, the State must prove beyond a reasonable doubt that the accused knew his or her accomplice was armed with a deadly weapon at the time of the commission of the crime." Id. at 118, 653 P.2d 1040.[6] Surely if the State must prove knowledge when a defendant is only constructively armed through an accomplice, the State must prove that the defendant knew of the firearm in a constructive possession case like the one before us.
Indeed, the reasoning of this court in McKim about the importance of knowledge to rationale underlying the weapon enhancement applies equally to the current case:
One who knows an accomplice is armed can take the weapon and use it or can direct the accomplice in its use, whereas one without knowledge that the accomplice is armed presents neither danger. Since the purpose of the deadly weapon statute is to deter would-be criminals from carrying weapons which have the potential of inflicting death and injury, the statute should reach not only those who are armed, but also those who know an accomplice is armed.
Id.
Rephrasing McKim, one who knows of a weapon can take and use it, whereas one without knowledge of the weapon presents no danger. I can make no better argument than that already made by this court. The majority preserves a defendant's right to argue that he was not armed because he did not know of the weapon, but the jury instructions endorsed by the majority allow a jury to find that the defendant was armed even if it concludes that he did not know of the weapon. Following McKim, I would require the State to prove knowledge and require the jury to be so instructed.
I dissent.
ALEXANDER, C.J., and CHAMBERS, J., concur.
NOTES
[1] The charge of driving under the influence was dismissed during the trial.
[2] This statute was later recodified as RCW 9.94A.602 without changing the language.
[3] This statute was later recodified as RCW 9.94A.510(3) without changing the language.
[4] In Willis we noted that while including nexus language is not required, including such language might assist the jury.
[5] These factors are: (1) that the statute must be construed in light of the background rules of the common law, and its conventional mens rea element; (2) whether the crime can be characterized as a "public welfare offense" created by the legislature; (3) the extent to which a strict liability reading of the statute would encompass seemingly entirely innocent conduct; (4) the harshness of the penalty; (5) the seriousness of the harm to the public; (6) the ease or difficulty of the defendant ascertaining the true facts; (7) relieving the prosecution of difficult and time-consuming proof of fault where the legislature thinks it important to stamp out harmful conduct at all costs, "even at the cost of convicting innocent-minded and blameless people"; and (8) the number of prosecutions to be expected. State v. Bash, 130 Wash.2d 594, 605-06, 925 P.2d 978 (1996) (partly adopting the factors in Staples v. United States, 511 U.S. 600, 615-19, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994)). However, not all of these factors will necessarily aid in determining legislative intent in a given case. See Anderson, 141 Wash.2d at 365, 5 P.3d 1247.
[6] We also note that, as the State points out, the Bash factors do not easily translate to the context of a sentence enhancement.
[7] Urging the same rationale as the trial court used in Woolfolk, the State argues that knowledge is irrelevant to the question of whether the defendant is "armed," citing State v. Bilal, 54 Wash.App. 778, 782, 776 P.2d 153 (1989). In Bilal the Court of Appeals held that this court's decision in State v. McKim, 98 Wash.2d 111, 653 P.2d 1040 (1982), requiring that before a sentence could be enhanced under former RCW 9.95.040 (1975) the evidence must support the conclusion that the accused was armed or that he knew an accomplice was armed, was superseded by the legislature's enactment of RCW 9.94A.125 as part of the Sentencing Reform Act in 1981. We disagree. In State v. Davis, 101 Wash.2d 654, 682 P.2d 883 (1984), decided after adoption of RCW 9.94A.125 and relied on by the court in Bilal as showing that McKim was overruled by statute, this court reaffirmed a distinction between accomplice liability for a substantive crime and accomplice liability for enhancement statutes. Davis, 101 Wash.2d at 658, 682 P.2d 883. As this court recognized in Davis, the issue before it was entirely different from that addressed in McKim. Davis, 101 Wash.2d at 658-59, 682 P.2d 883. Although we said in State v. Silva-Baltazar, 125 Wash.2d 472, 481, 886 P.2d 138 (1994) that McKim had been superseded by statute with regard to knowledge that an accomplice was armed, and cited Bilal, Silva-Baltazar did not involve a firearm enhancement statute and the discussion about McKim was dicta. Former RCW 9.94A.125 has been amended several times and recodified, but the language relevant here has remained the same.
[1] State v. Valdobinos, 122 Wash.2d 270, 282, 858 P.2d 199 (1993) ("A person is `armed' if a weapon is easily accessible and readily available for use, either for offensive or defensive purposes.").
[2] Woolfolk arose in the context of the State's motion in limine which barred Woolfolk from arguing to the jury that knowledge is an essential element of being armed with a deadly weapon. Woolfolk, 95 Wash.App. at 544, 977 P.2d 1.
[3] In fact, the Rules of Appellate Procedure limit courts to deciding cases "only on the basis of issues set forth by the parties...." RAP 12.1(a).
[4] In fact, a more extensive quote from Johnson is illuminating:

The theory behind the deadly weapon enhancement is that a crime is potentially more dangerous to the victim, bystanders or the police if the defendant is armed while he is committing the crime because someone may be killed or injured. Thus, the crime is more serious than it would have been without the weapon. Where no officers, victims or bystanders are present, the potential danger is also absent, and the rationale for greater punishment based on greater danger to others does not apply. The underlying rationale can apply only where there is a possibility the defendant would use the weapon.
Johnson, 94 Wash.App. at 896, 974 P.2d 855.
[5] RCW 9A.08.020(1).
[6] While the continued viability of McKim has been questioned in the past, State v. Silva-Baltazar, 125 Wash.2d 472, 481, 886 P.2d 138 (1994), I agree with the majority that McKim is still good law. Majority at 1223-24 n.7.