IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 87542-6-I |
| Respondent, | |
| | DIVISION ONE |
| v. | |
| | UNPUBLISHED OPINION |
| LILIA SUSANA GALAVIZ-CRUZ, | |
| Appellant. | |

DÍAZ, J. — A jury convicted Lilia Susana Galaviz-Cruz of three counts of possession of a controlled substance with intent to deliver. The jury also found that she was armed with a firearm for each count. She now challenges the jury instruction for the firearm enhancement. She alleges additional errors in her statement of additional grounds (SAG). Finding no error, we affirm.

I.     BACKGROUND

Galaviz-Cruz and her husband, Rigoberto Yepis Islas, sold narcotics to an undercover officer on three separate dates. On February 21, 2024, police arrested them and searched their car. Police found large amounts of methamphetamine, fentanyl, and cocaine in the car. They also found a pistol in the car's center console.

The State charged Galaviz-Cruz with three counts of possession with intent

to deliver, each with a firearm enhancement. At trial, Galaviz-Cruz did not dispute her participation in the sales of the narcotics. She explained that she was present to interpret for her husband. She claimed that her husband threatened her life and that she complied under duress.

The jury convicted Galaviz-Cruz of all three counts. It also found that she was armed with a firearm at the time of the crime for each count. The court sentenced her to 51 months for each conviction, to be served concurrently, plus an additional 108 months for the three firearm enhancements, for a total sentence of 159 months. Galaviz-Cruz timely appeals.

## II.    ANALYSIS

### A.    Jury Instruction for Firearm Enhancement

Galaviz-Cruz alleges that the trial court erred when it refused to instruct the jury that the "mere presence" of a firearm at the scene of the crime is insufficient grounds for a finding that the defendant was armed. We disagree.

If the State alleges that a criminal defendant was armed with a deadly weapon when they committed the crime, then "the jury shall, if it find[s] the defendant guilty, also find a special verdict as to whether or not the defendant or an accomplice was armed with a deadly weapon at the time of the commission of the crime." RCW 9.94A.825. If the jury finds that the defendant was armed, the defendant's sentence is increased pursuant to RCW 9.94A.533(3).

We review de novo for errors in jury instructions. State v. Weaver, 198 Wn.2d 459, 464, 496 P.3d 1183 (2021). Jury instructions must "'correctly tell the jury of the applicable law, not be misleading, and permit the defendant to present

his theory of the case.'" Id. at 466 (quoting State v. O'Hara, 167 Wn.2d 91, 105, 217 P.3d 756 (2009)).  When read as a whole, they "must make the relevant legal standard 'manifestly apparent to the average juror.'" Id. (quoting State v. LeFaber, 128 Wn.2d 896, 902, 913 P.2d 369 (1996)).

For a firearm enhancement, a jury instruction is proper if "the language of the instruction informs the jury that it must find a relationship between the defendant, the crime, and the deadly weapon."  State v. Willis, 153 Wn.2d 366, 374, 103 P.3d 1213 (2005).

Here, the court instructed the jury that "the State must prove beyond a reasonable doubt that the defendant was armed with a firearm at the time of the commission of the crimes."  The court offered further instructions:

> A person is armed with a firearm if, at the time of the commission of the crime, the firearm is easily accessible and readily available for offensive or defensive use.  The State must prove beyond a reasonable doubt that there was a connection between the firearm and the defendant or an accomplice.  The State must also prove beyond a reasonable doubt that there was a connection between the firearm and the crime.  In determining whether these connections existed, you should consider, among other factors, the nature of the crime and the circumstances surrounding the commission of the crime, including the location of the weapon at the time of the crime.

This instruction exactly follows 11 WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 2.10.01, at 62 (5th ed. 2024).[1]

The instruction does not, as Galaviz-Cruz argues, "fail to set forth the relevant legal standard."  The instruction correctly states that the State has the

---

[1] By so stating we do not mean to suggest that that fact ends the inquiry.  It remains true that "the fact that a jury instruction is modeled from a pattern instruction does not render it immune from judicial scrutiny."  State v. Morgan, 123 Wn. App. 810, 820 n.29, 99 P.3d 411 (2004).

burden to establish beyond a reasonable doubt "that a nexus exists between the defendant, the crime, and the firearm." State v. Barnes, 153 Wn.2d 378, 383, 103 P.3d 1219 (2005). Stated otherwise, we disagree with Galaviz-Cruz's claim that "[n]othing in the jury instructions . . . made it apparent that the mere presence of a firearm at the scene of the crimes was not enough to find the prosecution had proved the required nexuses." The requirements that the State prove two "connection[s]"—between the firearm and the defendant/accomplice, and between the firearm and the crime—made clear to the jury that mere presence is insufficient.

Galaviz-Cruz is correct that the "mere presence of a deadly weapon at the crime scene" is insufficient to show that a defendant is armed. Barnes, 153 Wn.2d at 383. And she is also correct that the weapon must be "easily accessible and readily available for use, either for offensive or defensive use." id.

Although both claims are a correct statement of the law, a "'specific instruction need not be given when a more general instruction adequately explains the law and enables the parties to argue their theories of the case.'" State v. Butler, 200 Wn.2d 695, 715, 521 P.3d 931 (2022) (internal quotation marks omitted) (quoting State v. Brown, 132 Wn.2d 529, 605, 940 P.2d 546 (1997)). For example, in Willis, our Supreme Court held that a jury instruction which stated that "the weapon must be readily available for offensive or defensive purpose" was sufficient even though the instruction did not expressly include a nexus requirement. 153 Wn.2d at 374.

This court has considered this precise assignment of error at least once

before. In State v. Benitez, No. 71305-1-I, slip op. at 2-4 (Wash. Ct. App. Jun. 1, 2015) (unpublished), https://www.courts.wa.gov/opinions/pdf/713051.pdf, this court held that the trial court did not err when it declined to include a sentence in the jury instructions that the "'[m]ere presence of a deadly weapon at the scene is insufficient to establish a nexus between the crime and the weapon.'"[2] As we do, this court acknowledged that the sentence is a correct statement of the law. Id. at 2. However, as we do, it rejected the argument that refusal to give the instruction deprived Benitez of his ability to argue his theory of the case. Id. at 3. It held that, since the instruction "directed the jury to consider whether there was a connection between the weapon and the defendant or an accomplice, and a connection between the weapon and the crime," Benitez was able to argue that the State had not proved his connection to the weapon. Id. at 3-4.

In reply, Galaviz-Cruz does not claim that the instruction deprived her of her ability to argue her case, but instead she attempts to distinguish Benitez by insisting that the instruction "failed to make the applicable legal standard 'manifestly apparent to the average juror.'"[3] Specifically, she argues that the

---

[2]"Washington appellate courts should not, unless necessary for a reasoned decision, cite or discuss unpublished opinions in their opinions." GR 14.1(c). "However, unpublished opinions of the Court of Appeals filed on or after March 1, 2013, may be cited as nonbinding authorities, if identified as such by the citing party, and may be accorded such persuasive value as the court deems appropriate." GR 14.1(a). We cite to this opinion, consistent with GR 14.1(c), as it is necessary for a reasoned decision.

[3] Indeed, she concedes it, stating "[she] does not assert that the failure to include the proposed 'mere presence' deprived her of her ability to argue her theory of the case." Moreover, Galaviz-Cruz acknowledges that she did not address the firearm instruction or relevant jury instruction in her closing remarks. But she does not claim that the jury instructions prevented her from making her argument.

instruction "fail[ed] to inform the average juror that the required 'connection' is that the firearm is 'there to be used.'" (Quoting State v. Sassen Van Elsloo, 191 Wn.2d 798, 828-29, 425 P.3d 807 (2018).) But Galaviz-Cruz's own orally proposed instruction also did not inform the jury that the firearm must be "there to be used." And neither did her proposed written instruction or halftime motions. She asked, at most, for the court to instruct the jury that "mere presence" is not sufficient and that they must find the weapon was "easily accessible and readily available for offensive purposes," respectively.

We hold that the instruction requiring the State to prove the two connections—between the firearm and the defendant/accomplice, and between the firearm and the crime—adequately informed the jury that "mere presence" is insufficient and permitted Galaviz-Cruz to argue her case. A reasonable juror would have understood that the weapon must be there "either for offensive or defensive purposes" related to the crime. Barnes, 153 Wn.2d at 383. We reject Galaviz-Cruz's argument that the jury instruction "improperly relieved the prosecution of its burden to prove not only accessibility but also the required nexus between the firearm and the offenses."

Because we hold that no error occurred, we therefore also reject Galaviz-Cruz's argument that the error requires reversal "unless the prosecution can prove the error was harmless." (Citing State v. Brown, 147 Wn.2d 330, 339, 58 P.3d 889 (2002).) Even assuming arguendo that the jury instruction was misleading, reversal is not required "unless prejudice is shown by the complaining party." State v. Aguirre, 168 Wn.2d 350, 364, 229 P.3d 669 (2010). Such a nonconstitutional

error is prejudicial only if "'within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected.'" State v. Barry, 183 Wn.2d 297, 303, 352 P.3d 161 (2015) (quoting State v. Smith, 106 Wn.2d 772, 780, 725 P.2d 951 (1986)).

Galaviz-Cruz cannot show that it is reasonably probable that, if the court had included the "mere presence" language, the outcome of the trial would have been different. The court correctly instructed the jury that the State must prove a connection between Galaviz-Cruz, the firearm, and the crime. The court also instructed the jury to consider "among other factors, the nature of the crime and the circumstances surrounding the commission of the crime, including the location of the weapon at the time of the crime." We presume that the jurors followed the court's instructions. In re Pers. Restraint of Phelps, 190 Wn.2d 155, 172, 410 P.3d 1142 (2018). The jurors concluded, based on those factors, that the State proved the necessary connections beyond a reasonable doubt. Galaviz-Cruz, therefore, does not show that the jury found Galaviz-Cruz was armed simply because a weapon was present.[4]

We therefore hold that the jury instruction given was proper and is not grounds for reversal.

B.    Statement of Additional Grounds

---

[4] Galaviz-Cruz notes that there was "no evidence that she or her husband ever brandished a gun during any of the sales of drugs to the undercover officer . . . [or] attempted to use the gun on the day of their arrests." But this argument challenges the sufficiency of the evidence. Galaviz-Cruz clarifies that she does not argue that the evidence was insufficient, only that the jury was not correctly instructed how to evaluate the evidence.

Galaviz-Cruz has submitted a pro se SAG, which are permitted by RAP 10.10. They serve to ensure that an appellant can raise issues in their criminal appeal that may have been overlooked by their attorney. Recognizing the practical limitations many incarcerated individuals face when preparing their own legal documents, RAP 10.10(c) does not require that the statement be supported by reference to the record or citation to authorities. However, it does require that the appellant adequately "inform the court of the nature and occurrence of alleged errors." RAP 10.10(c). It also relieves the court of any independent obligation to search the record in support of the appellant's claims, making it prudent for the appellant to support their argument through reference to facts. RAP 10.10(c). To enable that factual support, it provides the means for appellants to obtain copies of the record from counsel. RAP 10.10(e).

Galaviz-Cruz asserts that the State mishandled evidence when it packaged and signed for evidence, which she believes the police should have done. She also claims that her attorney "opened one of the items of evidence before the judge and the jury were able to see it." She does not identify which evidence the attorneys mishandled or when this occurred such that we are able to fairly review this alleged error. See RAP 10.10(c). In other words, this claim is too vague for us to analyze further. State v. Bluehorse, 159 Wn. App. 410, 436, 248 P.3d 537 (2011).

Galaviz-Cruz also claims that her trial counsel discouraged her from taking a 45-month plea deal because they were confident they could win at trial. When advising about plea deals, counsel must "reasonably evaluate the evidence

against the accused and the likelihood of a conviction if the case proceeds to trial so that the defendant can make a meaningful decision as to whether or not to plead guilty." State v. A.N.J., 168 Wn.2d 91, 111-12, 225 P.3d 956 (2010). Defendants must overcome "'a strong presumption that counsel's performance was reasonable.'" State v. Grier, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011) (quoting State v. Kyllo, 166 Wn.2d 856, 862, 215 P.3d 177 (2009)).

Galaviz-Cruz fails to provide evidence that her counsel's evaluation of the likelihood of conviction was unreasonable. Because nothing in the record indicates that counsel provided unreasonable advice regarding a plea deal, Galaviz-Cruz cannot overcome the presumption that her counsel's representation was adequate.[5] Grier, 171 Wn.2d at 33. We therefore reject both of the alleged errors that Galaviz-Cruz raises in her SAG.

### III. CONCLUSION

We affirm Galaviz-Cruz's convictions and sentence.

_Díaz, J._

WE CONCUR:

_Colum, J._                    _Mann, J._

---

[5] Galaviz-Cruz did inform the court at sentencing that she had been "willing to plead guilty and take 45 months." There is nothing in the record explaining why she ultimately decided to proceed to trial, however.