[No. 38429-9-II. Division Two. July 20, 2010.]

THE STATE OF WASHINGTON, *Respondent*, v. JAMES PERRY KOCH, *Appellant.*

22

24

*Gregory C. Link* (of *Washington Appellate Project*), for appellant.

*Deborah S. Kelly, Prosecuting Attorney*, and *Brian P. Wendt, Deputy*, for respondent.

¶1 HUNT, J. — James Perry Koch appeals his jury convictions for second degree manslaughter and first degree criminal mistreatment in connection with the death of his father, Lloyd Koch,[1] who died of heart failure at the hospital after ongoing vehement refusals to accept assistance from

---

[1] For clarity, we sometimes refer to Koch's father as Lloyd. We intend no disrespect.

Koch, his siblings, and hospice. Koch argues that: (1) his two convictions constitute double jeopardy; (2) the trial court violated his right to due process by giving jury instructions that did not represent all theories of his case and, specifically, by refusing to give his proposed instruction that unwanted touching can constitute assault; (3) the State's presentation of alternate means for establishing a duty to force care on Lloyd violated Koch's right to a unanimous verdict; and (5) the State did not provide sufficient evidence to meet its burden of proof that Koch had a duty to force care on his father under the circumstances of this case. Holding that the trial court committed reversible error in denying Koch's request for a jury instruction that unwanted medical attention constitutes assault, we reverse and remand for a new trial.

## FACTS

### I. BACKGROUND

¶2 Eighty-six-year-old Lloyd Koch was a stern and private man who repeatedly told his adult children that he wished to die at home, where his wife had passed in 1996, without outside interference. According to Lloyd's daughter Shirley Kreaman, throughout their lives, the Koch children had felt reverent fear toward their father.

¶3 Out of all his children, Lloyd's son James Koch had the most reason to fear the consequences of violating their father's wishes. In 2004, frustrated with Lloyd's refusal to bathe and to accept medical assistance, Koch had slapped his father. Lloyd had pressed charges against Koch, which resulted in Koch's conviction for assault.

¶4 Three years later, in August 2007, Koch moved back in with his father and sister Rose Gloyd. Koch and his father continued to have bitter confrontations, specifically over Lloyd's hygiene. During this time, Kreaman described Lloyd's hygiene efforts as deficient, stating his clothes had "compacted poop on them," and he "smelled of urine."

Verbatim Report of Proceedings (VRP) (Aug. 28, 2008) at 35. Even when physically able, Lloyd refused to shower or to take immersion baths; he gave himself only infrequent sponge baths. Although mostly unable to speak, Lloyd physically rebuffed assistance from everyone, occasionally reiterating to his children that his health care was "his business." Ex. 25, at 59-61; VRP (Aug. 28, 2008) at 54. With the exception of bathing, Lloyd had generally been able to care for himself until the week before his death.

¶5 When Koch moved back in with his father in August 2007, he recognized that Lloyd needed assistance. Knowing, however, that Lloyd would spurn assistance from his children, Koch and his siblings sought outside help. But Lloyd refused assistance from non-family-members just as vehemently. Despite being diabetic and having some form of mental deterioration, he refused to go to doctors' appointments his children made for him. Koch and his siblings called hospice several times between August and October 2007; but each time, Lloyd "boot[ed]" them out after only a few minutes. VRP (Sept. 3, 2008) at 29.

¶6 During this time, Lloyd could walk and use the bathroom by himself. But around October 5, he sat down in his chair and refused to get up for six days, during which he urinated and defecated on himself repeatedly, increasing the likelihood and severity of already difficult-to-prevent bedsores. According to Gloyd, during this last week, she and Koch attempted daily to persuade Lloyd to let them provide care. But Lloyd continued to rebuff their efforts.

¶7 By October 11, however, Lloyd's condition had so far deteriorated that Koch decided he had to force care on Lloyd. Koch contacted John Echezaretta and Brian Emmons, who helped clean the fecal matter and urine off Lloyd. While cleaning Lloyd, the men saw the full extent of Lloyd's deterioration: Lloyd had dried and fresh fecal matter on his thighs and back, bedsores on the backs of his legs, and maggots on his feet. Koch assured Emmons that he would call hospice the next day; nevertheless, Emmons called 911. The paramedics removed Lloyd to the hospital,

where he was treated for moderate to severe dehydration, tachycardia, bed sores, urine burns, high blood sugar, and shock.

¶8 Koch was taken to the police station, where he was interviewed by Detective Jason Viada. Koch listed his responsibilities for his father and his father's household, including paying property taxes and providing meals through Meals on Wheels. Koch explained that he had entered into a verbal agreement with Lloyd to take care of his father, who, nevertheless, had vehemently refused care repeatedly. At one point, Koch had become so frustrated that he had slapped his father, who then successfully prosecuted him for criminal assault. After this assault conviction, Koch was extremely reluctant to force unwanted care on Lloyd.

¶9 A week later, Lloyd died in the hospital from congestive heart failure caused by aggressive medical rehydration. Dr. Daniel Selove, the forensic pathologist who conducted the autopsy, reported that Lloyd's dehydration was caused by insufficient fluid intake, increased urination from his diabetes, and fluid loss through his bedsores.

## II. Procedure

¶10 The State charged Koch with first degree manslaughter and first degree criminal mistreatment for failure to provide necessary care for Lloyd.[2] More specifically, with regard to the criminal mistreatment charge, the State alleged that Koch was a person (1) entrusted with the physical custody of a dependent person, (2) who had assumed the responsibility to provide the basic necessities of life, or (3) employed to provide a person with the basic necessities of life. The State further alleged that Koch had "caus[ed]" Lloyd's death by allowing him to stay in his chair while his condition deteriorated. Clerks Papers (CP) at 111.

---

[2] The State also charged Koch with 10 counts of forgery, of which he was acquitted.

¶11 At Koch's jury trial, various witnesses confirmed the facts set forth above in Koch's interview with Detective Viada. Koch adduced evidence to support his defense that forcing care on Lloyd would have been unwanted contact, constituting assault. Koch's defense counsel requested the following jury instruction:

> It is unlawful to use physical force or [sic] upon another person absent that person's consent, even if the actor's purpose is to provide the basic necessities of life.

CP at 51 (citing *In re Welfare of Colyer*, 99 Wn.2d 114, 660 P.2d 738 (1983)). The trial court denied this request, stating that *Colyer* was an incomplete statement of a complex area of law and, therefore, the instruction, based on *Colyer*, was not appropriate for this case.

¶12 The trial court instructed the jury based on Washington's criminal pattern jury instructions. These instructions included the elements of each of the charged crimes, including statutory definitions of "recklessness" and "criminal negligence." CP at 68, 75. The trial court did not, however, instruct the jury that unwanted contact constitutes assault or give any other instruction to provide context for the jury's consideration of evidence of Koch's tenuous relationship with his father and the previous assault incident, particularly as this evidence might bear on whether Koch's reluctance to act was reasonable under the circumstances. Unable to reach a unanimous verdict on the first degree manslaughter charge, the jury found Koch guilty of second degree manslaughter and first degree criminal mistreatment.

¶13 Koch appeals.

## ANALYSIS

### I. Statutory Duty To Act

¶14 Koch contends that the State did not present sufficient evidence to prove that he had a duty to act to provide

medical care for his ailing father and that the presentation of alternative means for establishing the statutory duty deprived him of a unanimous jury verdict. We agree with the State that there is sufficient evidence to prove that Koch assumed the responsibility to provide Lloyd care under each of the alternative means set forth in RCW 9A.42.020 and, therefore, that Koch's right to a unanimous jury verdict was not violated.

## A. Sufficiency of Evidence

¶15 We employ the standard of review that evidence is sufficient if, when viewed in the light most favorable to the State, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *State v. Rempel*, 114 Wn.2d 77, 82, 785 P.2d 1134 (1990) (citing *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980)). As we next demonstrate, there is sufficient evidence to support each of the alternative theories for the creation of a statutory duty.

## B. Jury Unanimity

¶16 In a related argument, Koch contends that the State violated his right to a unanimous jury verdict on the criminal mistreatment charge by presenting alternative means for establishing a duty to provide assistance to Lloyd. This argument also fails.

¶17 The first degree criminal mistreatment instruction required the jury to decide whether or not Koch was (1) entrusted with the physical custody of Lloyd, (2) a person who had assumed the responsibility to provide the basic necessities of life to Lloyd, or (3) a person employed to provide the basic necessities of life to Lloyd. If sufficient evidence justifies each of the alternative means for establishing Koch's duty, then the State did not violate the jury unanimity requirement by presenting alternative means.

¶18 RCW 9A.42.020(1)'s definition of "first degree criminal mistreatment" provides:

A parent of a child, the person entrusted with the physical custody[3] of a child or dependent person, a person who has assumed the responsibility to provide to a dependent person the basic necessities of life, or a person employed to provide to the child or dependent person the basic necessities of life is guilty of criminal mistreatment in the first degree if he or she recklessly, as defined in RCW 9A.08.010, causes great bodily harm to a child or dependent person by withholding any of the basic necessities of life.

¶19 First, no legal designation, such as power of attorney, is required to establish physical custody. Thus, Koch could have been a person entrusted with the physical custody of Lloyd. We conclude that the legislature intended "physical custody," as used in RCW 9A.42.020 (criminal mistreatment), to mirror the definition of "physical custody" in RCW 26.27.021(14), which provides, " 'Physical custody' means the physical care and supervision of a child." Even though the Title 26 RCW definition specifically states that "physical custody" relates to a child, RCW 9A.42.020 finds a duty in "the person entrusted with the physical custody of a child *or dependent person*." (Emphasis added.) Hence, the legislature must have intended "physical custody" in this context to refer to a child *or* to some other type of dependent person. Thus, a rational juror could have found that Koch was physically caring for or supervising his father, a dependent person.

¶20 Second, a jury could have found that Koch assumed the responsibility to provide Lloyd with the basic necessities of life. Koch told Detective Viada that he took care of responsibilities around the Koch home, such as meals, laundry, payment of property taxes, and making doctors' appointments for Lloyd.[4] That Koch had verbally promised Lloyd to take care of him and Koch was respon-

---

[3] "Physical custody" in RCW 26.27.021(14) refers to physical care of a child.

[4] Koch relies on *Folsom v. Burger King*, 135 Wn.2d 658, 674-75, 958 P.2d 301 (1998) to argue that to create a duty to provide Lloyd with the basic necessities of life, the State was required to prove a "special relationship" showing that he had assumed such responsibility. *Folsom* is a civil case involving a negligence claim, for which one of the required elements is proof of a duty of care. But Koch was

sible for many household functions was sufficient evidence for a rational juror to have found that Koch had assumed the responsibility to provide Lloyd with the basic necessities of life.

¶21 Third, there was also sufficient evidence for a rational juror to have found that Koch was "employed" by his father to provide the basic necessities of life. RCW 9A.42.010(5) provides that "[a] person may be 'employed' regardless of whether the person is paid for the services" or not. A rational juror could have concluded that Koch's use of his father's funds to provide meals, Koch's lack of another job, and Lloyd's agreement to let Koch live in the house rent free established employment.

¶22 Looking at the evidence in the light most favorable to the State, we hold that there was sufficient evidence for a rational juror to have found that Koch had assumed responsibility to provide care for his father, under any of the State's alternative means. Therefore, Koch was not denied his right to a unanimous verdict.

## II. DOUBLE JEOPARDY

¶23 Koch next asserts that his convictions for second degree manslaughter and first degree criminal mistreatment violate his constitutional right to be free from double jeopardy.[5] Based on the State's concession below, the trial court's statement that the two convictions merged at sentencing,[6] and the fact that we are reversing and remanding for a new trial, it is not necessary for us to address Koch's double jeopardy argument.

---

charged under RCW 9A.42.020, which does not include a duty of care as an element of the crime of first degree criminal mistreatment.

[5] U.S. CONST. amend. V.

[6] At Koch's sentencing, the trial court stated that the counts were "one and the same and the two charges merge." VRP (Oct. 2, 2008) at 10. The State agreed that the offenses "merged for sentencing purposes." VRP (Oct. 6, 2008) at 14. But the judgment and sentence lists both convictions, treating them as the "same criminal conduct." CP at 9.

¶24 Moreover, in light of the State's following concession on appeal, we do not know whether the State will again charge both crimes on remand or again seek double sentences if Koch is reconvicted on both counts:

> Here, manslaughter was criminal mistreatment with the additional element of death . . . .

> Under the "same evidence" test, [the] State concedes that manslaughter and criminal mistreatment are the same "in fact" (*i.e.*, arising from the week Mr. Koch withheld the basic necessities from his dependent father). Additionally, the State concedes that the two crimes are the same "in law" (*i.e.*, evidence to support the conviction for manslaughter is sufficient to warrant a conviction for criminal mistreatment[)].

Br. of Resp't at 17-18.[7]

### III. DUE PROCESS RIGHT TO PRESENT DEFENSE

¶25 Koch's most compelling argument is that the trial court violated his right to due process by refusing to give his proposed instruction that unwanted touching can constitute assault and by giving jury instructions that did not allow him to present, or the jury to consider, the core of his defense. The State asserts that Koch's theory was presented to the jury and covered in the instructions through the "reasonableness" component of the culpability definitions, considered in light of the evidence presented at trial. We disagree with the State and agree with Koch.

---

[7] The State goes on to argue, however, that "there is clear evidence of contrary legislative intent," Br. of Resp't at 18, in that the legislature intended to address and to punish these crimes as "separate evils" in different chapters of the criminal code, with manslaughter being located in the chapter covering homicide. Br. of Resp't at 19. The State further asserts, "Ultimately Lloyd Koch died due to the abuse and neglect he received." Br. of Resp't at 20. The State does not mention that Lloyd died from congestive heart failure caused by aggressive medical rehydration in the hospital. Nor does the record indicate whether Lloyd would have died anyway from dehydration, bed sores, urine burns, and shock if the rehydration had not been so aggressive.

## A. Instructions

■■ ¶26 Due process[8] requires that jury instructions (1) allow the parties to argue all theories of their respective cases supported by sufficient evidence, (2) fully instruct the jury on the defense theory, (3) inform the jury of the applicable law, and (4) give the jury discretion to decide questions of fact. *State v. Barnes*, 153 Wn.2d 378, 382, 103 P.3d 1219 (2005) (citing *Blaney v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. No. 160*, 151 Wn.2d 203, 210, 87 P.3d 757 (2004)). The State must prove every element of the offense beyond a reasonable doubt. If the State does not meet this burden, the jury cannot convict the defendant. U.S. Const. amend. XIV; Wash. Const. art. I, § 22; *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Brown*, 147 Wn.2d 330, 339, 58 P.3d 889 (2002).

■ ¶27 To guard against false convictions, a structural commitment of our criminal justice system, the trial court should deny a requested jury instruction that presents a theory of the defendant's case only where the theory is *completely* unsupported by evidence. *Barnes*, 153 Wn.2d at 382. At the very least, the instructions must reflect a defense arguably supported by the evidence. *Id.*

■ ¶28 Koch requested an "assault defense" instruction to inform the jury that unwanted contact, even when to provide the necessities of life, can constitute assault. The trial court rejected this instruction on grounds that *Colyer*, the case Koch cited in support, is an incomplete statement of a complex area of law. *Colyer*, 99 Wn.2d at 116. Even assuming, without conceding, that the trial court is correct that Koch's proposed jury instruction was "an incomplete statement" of the law, VRP (Sept. 4, 2008) at 8, *Colyer* is not the only case supporting Koch's theory that caring for his father may have constituted assault. *See, e.g., Physicians' &*

---

[8] U.S. Const. amend. XIV.

*Dentists' Bus. Bureau v. Dray*, 8 Wn.2d 38, 41, 111 P.2d 568 (1941).[9] Therefore, the trial court erred in rejecting Koch's proposed instruction based on *Colyer*.

¶29 All three divisions of Washington's Court of Appeals agree that unlawful touching constitutes criminal assault based on the rights to privacy and to be free from bodily invasion.[10] Because there is no statutory definition of "assault," the courts employ the common law definition. *State v. Krup*, 36 Wn. App. 454, 457, 676 P.2d 507 (1984) (citing *Peasley v. Puget Sound Tug & Barge Co.*, 13 Wn.2d 485, 125 P.2d 681 (1942); *Howell v. Winters*, 58 Wash. 436, 108 P. 1077 (1910)). This common law definition does not require that actual harm be intended or actually result. *State v. Parker*, 81 Wn. App. 731, 737, 915 P.2d 1174 (1996) (citing *State v. Ashcraft*, 71 Wn. App. 444, 454, 859 P.2d 60 (1993)). In *Parker*, Division Three of our court affirmed the defendant's fourth degree assault conviction (with a special allegation of sexual molestation) for touching a female classmate's breast. *Id.* at 738. In contrast to Koch's situation, Parker's assault conviction included a sexual molestation allegation; nevertheless, the unwanted contact alone constituted criminal assault, in spite of the absence of visible bodily injury. *Id.* at 737 (citing *Ashcraft*, 71 Wn. App. at 454). Like Parker's sexual molestation victim, Koch's invalid father sustained no bodily harm from Koch's touching him during attempts to persuade, or even to force, Lloyd to receive medical care or to bathe.

¶30 Unlike Parker's molesting of his victim, however, Koch intended his contact to benefit his father's health. But Lloyd thwarted Koch's attempted beneficial contact; and unwanted contact, even if helpful in intent, can constitute assault. *State v. Elmi*, 166 Wn.2d 209, 215-16, 207 P.3d 439

---

[9] Although this citation refers to civil cases, assault can be both criminal and civil.

[10] *See State v. Stevens*, 127 Wn. App. 269, 277, 110 P.3d 1179 (2005); *State v. Parker*, 81 Wn. App. 731, 736-37, 915 P.2d 1174 (1996); *State v. Ashcraft*, 71 Wn. App. 444, 455, 859 P.2d 60 (1993); *Cruzan v. Mo. Dep't of Health*, 497 U.S. 261, 279, 110 S. Ct. 2841, 111 L. Ed. 2d 224 (1990).

(2009) (holding unlawful touching or actual battery constitutes assault). Because his father had previously pressed charges against him for assault, Koch had reason to fear that forcing care on his father would again expose him to criminal charges. But the trial court's instructions did not allow the jury to consider the legal ramifications of this past history and the possibility of its serving as a defense to the charges.

### 1. *Colyer* and requested "assault defense" instruction

¶31 The trial court rejected Koch's proposed "assault defense" instruction, noting that *Colyer* is "not a complete statement of what is a very complex law." VRP (Sept. 4, 2008) at 8. Even assuming, without deciding, that the trial court's assessment was correct, it did not justify rejecting the instruction. In our view, the proposed instruction was sufficiently complete and as correct as possible because there is no settled law addressing unwanted health care forced by one individual on another. There is, however, settled law holding that unwanted contact constitutes assault.

¶32 *Colyer* addresses an individual's right to remove life-support systems from a person absent countervailing state interests. *Colyer* does not address criminal culpability for an individual's failure to force life-sustaining care on an adult who refuses such care. We agree with the learned trial court that the law addressed in *Colyer* is complex and deals with issues outside the scope of the present case and that basing a jury instruction solely on *Colyer* would have been inappropriate here because the circumstances of the two cases differ so markedly.

¶33 Nevertheless, although *Colyer* may not fully or accurately have supported Koch's requested instruction, the instruction was not an incorrect statement of the law nor would it have misled the jury about its duty to apply the law to the facts of this case. That defense counsel did not base this requested jury instruction on more settled law (for

example, on the common law right to be free from bodily invasion)[11] should not have prevented instructing the jury to consider Koch's defense that he refrained from assisting his father for fear of being held criminally culpable again.

## 2. Criminal mistreatment—recklessness

¶34 To convict Koch of first degree criminal mistreatment under RCW 9A.42.020, the State had to prove beyond a reasonable doubt that he acted recklessly in failing to provide medical care to his father. To prove recklessness, the State had to show that (1) in failing to act, Koch knew of and disregarded a substantial risk that a wrongful act might occur; and (2) disregarding that risk "gross[ly] deviat[ed] from conduct that a reasonable person would exercise *in the same situation.*" RCW 9A.08.010(1)(c) (emphasis added); CP at 77.

¶35 Recklessness has both subjective and objective elements. *State v. R.H.S.,* 94 Wn. App. 844, 847, 974 P.2d 1253 (1999). The subjective element requires the jury to determine what appeared reasonable to Koch at the time he committed the charged offense. *Id.*; RCW 9A.08.010. A reasonable belief that the defendant did not act with the statutorily required culpability constitutes a legitimate defense theory of the case. *State v. McCullum,* 98 Wn.2d 484, 490, 656 P.2d 1064 (1983) (quoting *Patterson v. New York,* 432 U.S. 197, 210, 97 S. Ct. 2319, 53 L. Ed. 2d 281 (1977)).

¶36 Through the testimonies of his sisters, Kreaman and Gloyd, Koch presented evidence that his father had adamantly and repeatedly refused to allow medical and personal hygiene assistance. Koch's interview with Detective Viada further confirmed the reasonableness of Koch's failure to force medical care on his father, against his father's wishes. Koch explained to Viada that Lloyd had previously

---

[11] *Cruzan,* 497 U.S. at 279.

pressed charges against him (Koch) for assault.[12] Evidence that Koch feared his father might again press charges and that Koch refrained from acting to honor his father's wishes not to receive medical care supports Koch's defense theory that he did not act recklessly by withholding care from his father. Therefore, the jury instructions should have included this theory. *Barnes*, 153 Wn.2d at 382.

¶37 We disagree with the State and the trial court that the court's pattern jury instructions allowed Koch to present this theory of the case for the jury's consideration. First, we acknowledge that jury instruction 11's statutory definition of "recklessness" included the subjective element—that "the disregard of such substantial risk [of harm] is a gross deviation from conduct that a reasonable person would exercise in the same situation." CP at 70. But this language did not allow the jury to evaluate Koch's evidence as a defense theory of the case: The "in the same situation" language of the "recklessness" definition did not inform the lay jury that it could consider Koch's relationship and past history with his father as a defense to the culpability element of criminal mistreatment.

¶38 Koch's requested "assault defense" instruction would have informed the jury that (1) Lloyd had a right to be free from bodily invasion from his son, even though he (Lloyd) was no longer strong enough to protest; and (2) Koch did not have to disregard his father's wishes by forcing on him unwanted care. The trial court instructed the jury to follow the law as it instructed them. Therefore, absent Koch's requested instruction or some functional equivalent, the lay jury could neither know nor consider that unwanted contact can constitute assault, thus essentially rendering legally irrelevant Koch's evidence that he was honoring his father's wish to die at home where his wife had passed, without unwelcome intrusion from others.

---

[12] The record is not clear about what caused Koch to slap his father, but one reading is that Koch slapped his father over a disagreement about Lloyd's caretaking. The important point here, however, is that Lloyd pressed criminal charges against his son Koch.

### 3. Second degree manslaughter—criminal negligence

¶39 To convict Koch of second degree manslaughter, the State had the burden of proving beyond a reasonable doubt that Koch acted with criminal negligence when he failed to provide, apparently by force if necessary, medical and hygiene care to his ailing father, who had repeatedly made clear that he wanted no outside help or interference. *See, e.g.*, VRP (Aug. 28, 2008) at 34, 40, 53-54, 64, 68, 73; VRP (Sept. 3, 2008) at 29, 32-34, 40-41, 47, 51, 57, 60; RCW 9A.32.070. To prove criminal negligence, the State had to show (1) that Koch failed to be aware of a substantial risk that a wrongful act might occur if he did not aid his father, and (2) that such *failure to be aware* of the risk "constitut[ed] a gross deviation from the standard of care that a reasonable person would exercise in the same situation." RCW 9A.08.010(1)(d); CP at 77.

¶40 "Deadlocked" over whether Koch was guilty of first degree manslaughter, CP at 20, the jury found Koch guilty of the lesser offense, second degree manslaughter, the culpability element of which is criminal negligence. The State, however, did not prove criminal negligence directly; rather than "fail[ing] to be aware of a substantial risk" of harm, it is undisputed that Koch was aware of the risk of not forcing assistance on his father.[13] RCW 9A.08.010(1)(d); Ex. 25, at 68. But Koch had what to him were legitimate reasons for choosing not to assist his father; as Koch explained:

> [W]hen it comes to the physical action, . . . he fights against me, and . . . I don't want any physical actions towards my father again. . . . I don't want to hurt him. I don't want to have any more, um, assault or anything to do with that.

Ex. 25, at 67.

---

[13] For example, during his interview with Detective Viada, Koch explained that he was aware of these risks but that he did not act sooner because of his father's strong wishes to avoid medical intervention and because of his prior assault accusation against Koch.

 ¶41 Because the State did not prove that Koch "negligently" failed to be aware of a substantial risk of harm to his father, the jury must have based its second degree manslaughter conviction on a different mens rea and level of culpability. Washington's general culpability statute provides that criminal negligence can be established by proving the higher mental states of intent, knowledge, or recklessness, RCW 9A.08.010(2), and the trial court so instructed the jury. Jury Instruction 11. "A person acts with intent or intentionally when he or she acts with the objective or purpose to accomplish a result which constitutes a crime." RCW 9A.08.010(1)(a). Thus, intent does not apply here because, although Koch intentionally did not assist his father sooner, he did not deprive his father of the basic necessities of life in order to cause death.

 ¶42 Knowledge requires both a subjective and objective analysis of the defendant's mental state:

A person knows or acts knowingly or with knowledge when:

(i) he or she is aware of a fact, facts, or circumstances or result described by a statute defining an offense; or

(ii) he or she has information which would lead a reasonable person in the same situation to believe that facts exist which facts are described by a statute defining an offense.

RCW 9A.08.010(1)(b). For Koch to be convicted of second degree manslaughter because he "knowingly" withheld care from his father, the jury would have to have been convinced that either (i) he knew not forcing care on his father would constitute a crime or (ii) a person in his situation had reason to know his actions would constitute a crime. The mental states of "knowingly" and "recklessly," which we discuss in the preceding section, required the trial court to instruct the jury about Koch's "assault defense" so it could evaluate the legal ramifications of Koch's reasons for withholding aid to his father under the circumstances in which Koch found himself with respect to his father. *See Barnes*, 153 Wn.2d at 382. Without this instruction, Koch was not able to negate the subjective culpability element of knowl-

edge or recklessness, which the State had to prove to convict him.

## B. Prejudice

¶43 To warrant reversal, an error must be prejudicial to a substantial right of the party convicted. *State v. Britton*, 27 Wn.2d 336, 338, 178 P.2d 341 (1947). Where, as here, a constitutional error—denial of Koch's due process right to have his defense theory presented to the jury—benefitted the prevailing party, namely the State, there is a rebuttable presumption that the error was harmful. *Blaney*, 151 Wn.2d at 210-11 (quoting *Britton*, 27 Wn.2d at 341). This presumption does not remove our duty to scrutinize the entire record to determine whether prejudice resulted. *Britton*, 27 Wn.2d at 344. On the contrary, the State must prove that the error was not prejudicial by showing, beyond a reasonable doubt, that the jury would have reached the same verdict even if the trial court had given the disputed instruction. *State v. Easter*, 130 Wn.2d 228, 242, 922 P.2d 1285 (1996).

¶44 Here, however, the State has not shown, nor can it show, beyond a reasonable doubt that the jury would have rendered the same guilty verdicts if the trial court had given Koch's requested "assault defense" instruction, or at least some reasonable equivalent. *Id.* Because Lloyd no longer actively resisted medical assistance after six days of confining himself to his chair, while his health rapidly deteriorated, the State argues that Lloyd, uncharacteristically, "secretly desired" assistance from Koch sooner than Koch finally forced it on him. This argument fails for two reasons, and, thus, does not show that the jury would have reached the same verdict even if the trial court had given it Koch's requested "assault defense" instruction.

¶45 First, the record does not support the State's assertion that after years of consistently, expressly, and belligerently fending off family members and others attempting to bathe him and offering medical and other care, Lloyd

spontaneously changed his mind and tacitly acquiesced to, even desired, medical assistance. If we accept this contention, then the right to be free from bodily invasion exists only for those strong enough to enforce it. At best the record shows that at this late stage, Lloyd was simply too weak to continue his protests.

¶46 Moreover, nothing in the record suggests that this proudly stubborn 86-year-old patriarch ever retreated from his persistent express command that he be allowed to die at home, where his wife had passed, regardless of how eccentric he may have appeared to the outside world and regardless of the ready availability of medical care in a hospital, which might have extended his life for a time. Because Lloyd had previously pressed charges against him, Koch was more wary of invading his father's personal space and disobeying his orders than even his siblings, whom Lloyd had also rebuffed when they, too, had offered care. With the requested "assault defense" instruction, the jury could have found that Koch acted reasonably under his particular circumstances.

¶47 The State cannot show beyond a reasonable doubt that the outcome of Koch's trial would have been the same had the trial court given his requested jury instruction on the "assault defense." Our constitution-based criminal justice system prefers erroneous acquittals to erroneous convictions; thus, public policy dictates that if there is any doubt about whether the jury verdict would have been the same had the challenged instruction been given, we must reverse and remand. *Id.* at 242. Such is the case here: We must reverse to ensure due process.

¶48 Accordingly, we reverse Koch's convictions and remand for a new trial.

HOUGHTON, J. PRO TEM., concurs.

¶49 QUINN-BRINTNALL, J. (dissenting) — I respectfully dissent from the portion of the majority opinion which holds

that James Perry Koch's due process rights were violated when the trial court refused to give his proposed assault defense instruction.[14] I agree that, given the unique facts of Koch's prior assault conviction and his statement to Detective Jason Viada that he did not render immediate assistance to his father out of fear of another assault charge, he would have been entitled to an instruction defining "assault" to allow the jury to evaluate whether his inaction was reasonable under the circumstances. But, in my opinion, because the proposed instruction Koch requested was an incomplete statement of the law that could mislead the jury,[15] the trial court properly refused to give it and did not violate Koch's due process right to present a defense.

¶50 Jury instructions are proper when they permit the parties to argue their theories of the case, do not mislead the jury, and properly inform the jury of the applicable law. *State v. Barnes*, 153 Wn.2d 378, 382, 103 P.3d 1219 (2005). The case upon which Koch relied to support his proposed instruction, *In re Welfare of Colyer*, 99 Wn.2d 114, 660 P.2d 738 (1983), did not hold that it was unlawful in every instance to use physical force on another person to provide basic necessities of life absent the person's consent, as does the proposed instruction at issue.[16] Instead, our Supreme Court, in the context of a euthanasia case, determined that the "right to refuse treatment . . . is not absolute" because the State has an interest in protecting the sanctity of its citizens' lives. *In re Colyer*, 99 Wn.2d at 122. Thus, *In re Colyer* concerned a private citizen's right to refuse treatment in the context of State action and did not address the situation presented here. More importantly, *In re Colyer* does not

---

[14] I disagree with the majority's decision to address Koch's double jeopardy/ merger claim, as it may not arise following retrial.

[15] Koch did not assert on appeal that his defense counsel was ineffective for failing to propose a proper instruction that would have allowed him to argue that his prior assault conviction informed his decision not to provide care necessary for his father's survival.

[16] Koch's proposed instruction stated, "It is unlawful to use physical force or [sic] upon another person absent that person's consent, even if the actor's purpose is to provide the basic necessities of life." Clerk's Papers at 51.

support the proposed instruction because it did not hold that the right to refuse life-sustaining treatment is absolute, which is an essential element of the proposed instruction.

¶51 Had defense counsel proposed a general instruction directing the jury to evaluate the reasonableness of Koch's actions in light of all the circumstances, including his previous assault charge, I would agree that he would be entitled to it. *See, e.g., State v. Wanrow*, 88 Wn.2d 221, 233-35, 559 P.2d 548 (1977) (discussing, in the context of self-defense instructions, approval of instructions directing the jury to evaluate the reasonableness of defendant's actions in light of all the circumstances). But Koch did not propose such an instruction and, more importantly, did not take exception to the trial court's disapproval of his instruction or request a different instruction in accord with applicable law that would have allowed him to argue the defense he asserts on appeal. *See* CrR 6.15(c) ("The court shall afford to counsel an opportunity in the absence of the jury to object to the giving of any instructions *and the refusal to give a requested instruction. . . .* The party objecting shall state the reasons for the objection." (emphasis added)). It is the responsibility and prerogative of the defense, not the trial court, to propose instructions adequate to argue counsel's theory of the case. CrR 6.15. Thus, even assuming that the jury instructions here did not allow Koch to argue the theory now asserted, his defense counsel invited any instructional deficiency by failing to propose a proper instruction, and Koch cannot now complain on appeal that the instructions violated his due process right to present a defense. Generally, when a defendant has failed to request an allegedly "missing" instruction or proposed an instruction he later claims is defective, the invited error doctrine precludes appellate review. *State v. Henderson*, 114 Wn.2d 867, 868, 792 P.2d 514 (1990). The invited error doctrine applies even where an alleged error is of constitutional magnitude. *Henderson*, 114 Wn.2d at 871. A narrow exception applies to allow review when a defendant claims that

the instructional error was the result of counsel's ineffective assistance, but Koch has not asserted an ineffective assistance of counsel claim in this appeal. *State v. Studd*, 137 Wn.2d 533, 551, 973 P.2d 1049 (1999).

¶52 Because, in my opinion, the trial court properly refused to give Koch's proposed instruction, which was an incomplete statement of the law, it did not err. Accordingly, I respectfully dissent.

Review denied and review of issue raised in respondent's answer denied at 170 Wn.2d 1022 (2011).