# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, ) | No. 75631-1-I |
| ) | |
| Respondent, ) | DIVISION ONE |
| ) | |
| v. ) | UNPUBLISHED OPINION |
| ) | |
| WILLIAM BARRY SELLEY, ) | |
| ) | |
| Appellant. ) | FILED: May 8, 2017 |

TRICKEY, A.C.J. — William Barry Selley appeals his conviction for the murder of Kathryn Southward. He argues that the prosecutor committed misconduct throughout the trial, that the court's exclusion of certain evidence interfered with his right to present a defense, that the trial court erred by refusing to give his proposed jury instruction on the lack of duty to seek medical care, and that there was insufficient evidence of a pattern of domestic violence to sustain both his conviction and his exceptional sentence. Finding no error, we affirm.

## FACTS

On September 23, 2012, Selley went to a bar with his girlfriend, Southward, and his coworker, Todd McIntosh. The three arrived at the bar around 9:00 p.m. and left around midnight. At approximately 1:30 a.m., Selley's neighbors heard Selley yelling and cursing loudly and other loud noises coming from Selley's house.

Early in the morning on September 27, 2012, Selley called 911, reporting that Southward had fallen and needed medical attention. Emergency responders arrived shortly after 2:00 a.m. Selley met the ambulance outside and explained that Southward's injuries came from falling several times in the last few days, including falling onto a ladder on the way into the house and hitting her head when

she fell within the house. One paramedic heard him say, "It looks like I beat the shit out of her."[1] The paramedics found Southward inside on a couch, in critical condition. They rushed her to the hospital.

Doctors diagnosed Southward with a subdural hematoma, a partially collapsed lung, a lacerated liver, internal bleeding, rhabdomyolysis (a breakdown of muscle and tissue caused by staying too long in one position), a perforated colon, and liver and kidney failure caused by trauma. She had bruising over multiple areas of her body. Southward slipped into a coma within days of arriving at the hospital. She died on October 5, 2012.

The State charged Selley with second degree murder, alleging that the death was part of a pattern of domestic violence.

Selley testified that Southward had fallen down at the bar before they left. According to Selley, both he and Southward were very drunk when they arrived home, and Southward fell several times, including over a ladder, as he tried to help her into the house. He said that over the next few days she fell several more times in the house, including down the stairs.

Many witnesses who treated Southward, either at Selley's house or the hospital, testified to the serious nature of her injuries. Dr. Thomas Clark, the medical examiner, gave his opinion that Southward had died from being "beaten by another."[2] Several witnesses testified about Selley's previous acts of domestic violence against Southward.

Before trial, the court ruled that Selley could introduce evidence that

---

[1] 2 Report of Proceedings (RP) (Oct. 23, 2014) at 200.
[2] 16 RP (Nov.19, 2014) at 2436-37.

2

Southward was intoxicated on September 23, but could not introduce evidence that she was an alcoholic. Selley moved for a mistrial several times throughout the trial, on various grounds, but the court denied his motions.

Selley proposed an instruction informing the jury that he did not have to seek medical care for Southward if she did not want it. The court declined to include the instruction.

The jury found Selley guilty of second degree murder and found that the aggravating circumstance of a pattern of domestic violence existed. The trial court imposed an exceptional sentence. Selley appeals.

## ANALYSIS

### Prosecutorial Misconduct

Selley argues that the prosecutor committed multiple acts of misconduct throughout the trial. Specifically, Selley argues that the State repeatedly described Selley's theory of the case inaccurately, commented on Selley's credibility, and made improper comments about testimony during its rebuttal closing argument. We address each act of alleged misconduct in turn.

### Selley's Defense

Selley argues that the State violated his right to due process by "deliberate[ly] twisting" Selley's "anticipated defense."[3] Specifically, Selley argues that, by repeating that Southward's injuries were inconsistent with "ground level falls," the State made it appear that Selley's defense was that Southward had experienced a ground level fall. Because the State properly asked witnesses to

---

[3] Br. of Appellant at 24.

compare Southward's injuries with the account they had received from Selley, we find no misconduct.

Selley argues that by "purposefully mischaracterizing the types of activities that Southward had engaged in when she sustained her injuries" the State "denied Selley his constitutional right to due process, a fair trial, and to present a defense."[4] "The tactic of misrepresenting defense counsel's argument . . . does not comport with the prosecutor's duty to 'seek convictions based only on probative evidence and sound reason.'" State v. Thierry, 190 Wn. App. 680, 694, 360 P.3d 940 (2015), review denied, 185 Wn.2d 1015, 368 P.3d 171 (2016) (quoting State v. Casteneda–Perez, 61 Wn. App. 354, 363, 810 P.2d 74 (1991)).

In Thierry, the State repeatedly told the jury that the defendant's theory of the case was that children could not be believed. 190 Wn. App. at 694. That was not the defendant's theory of the case. Thierry, 190 Wn. App. at 694. Rather, the defendant pointed to specific inconsistencies in the child's testimony to show that the child's testimony was not credible. Thierry, 190 Wn. App. at 694. The court ruled that the prosecutor's argument was improper because it unfairly undermined the defense's theory. Thierry, 190 Wn. App. at 695.

But here, the State's arguments and questions matched Selley's theory of the case. As defined by one of Southward's doctors at the hospital, a "ground level fall" is a fall from standing, meaning the degree of the fall could not be any higher than the height of the person who fell.[5] One emergency medical technician even noted that injuries from striking pieces of furniture are "pretty common" with ground

---

[4] Br. of Appellant at 26.
[5] 15 RP (Nov.18, 2014) at 2297.

level falls.[6]

Selley testified that Southward fell when she was standing by the car, she fell when he tried to pick her up from the ground, she fell from a half-way standing position, and she fell backwards from standing. For some of those falls, Selley testified that Southward fell onto objects or struck objects on her way down, including falling onto garbage cans and recycling bins and striking the back of her head on the television stand. These are all ground level falls. Accordingly, Selley's theory of the case included that ground level falls caused some of Southward's injuries.

Moreover, the State did not imply that Selley's account of the events was that Southward had suffered only ground level falls. Selley testified that Southward had told him she had fallen down a flight of stairs. The State asked Dr. Clark if Southward's injuries were consistent with a fall down stairs because that was part of the medical history he had received. And, during closings, the State argued that a fall down stairs could not explain Southward's injuries.

Based on Selley's testimony, it was not improper for the State to ask if Southward's injuries were consistent with ground level falls. The State did not intentionally twist or undermine Selley's defense and did not violate its duty to provide Selley with a fair trial.

### State's Objection

Selley argues that the State impermissibly commented on Selley's truthfulness when it objected to a question that called for speculation. We

---

[6] 5 RP (Oct. 29, 2014) at 734.

conclude that the State's objection did not suggest that the State doubted Selley's truthfulness.

In a criminal prosecution, the prosecutor may not offer his or her opinion on the credibility of any witness, including the defendant. State v. Lindsay, 180 Wn.2d 423, 437, 326 P.3d 125 (2014). But the prosecutor's statements cannot be considered out of context. State v. Jefferson, 11 Wn. App. 566, 569, 524 P.2d 248 (1974). The trial court is the best situated to determine whether an attorney's comments were improper, and the court's opinion will not be disturbed on appeal absent a manifest abuse of discretion. Jefferson, 11 Wn. App. at 569-70.

Here, Selley asked Detective Ryan Salmon several questions about his failure to obtain security footage from the bar where Selley and Southward had been drinking on the night at issue. Selley then asked the following question:

> [SELLEY]: And had you asked and known from Mr. Selley what bar they had been at on the 27th, then on that day, or the 28th you could have gone to Johnny's Bar –
>
> [STATE]: Objection, Your Honor; calls for speculation that he would have received the correct answer, and truthful answer about what bar it was and where to go.
>
> THE COURT: Sustained.[7]

The next day, Selley moved for a mistrial, arguing that the State had implied that it doubted Selley's truthfulness. The trial court held that the State's phrasing was "unfortunate" and "troubling" but that it did not rise to the level of a comment on Selley's credibility.[8]

Selley argues that the State called Selley a liar. We disagree. While the

---

[7] 4 RP (Oct. 28, 2014) at 587.
[8] 5 RP (Oct. 29, 2014) at 607-08.

6

State could have phrased its objection in a less "troubling" way, its phrasing was acceptable given the context. The State did no more than what Selley himself had just done. A few minutes before the State's objection, Selley introduced the idea that Detective Salmon might have received untruthful answers from the witnesses he interviewed, including Selley. Selley asked Detective Salmon, "[Y]ou had no idea whether Mr. Selley was giving you a bill of goods, or telling you something that was true?" and "[y]ou have no idea whether or not [Southward's mother] was giving you partial truths?"[9]

Moreover, the State's objection did not assume that Selley had given Detective Salmon false information. Like Selley's question, it pointed out that Detective Salmon could not be sure that he would receive truthful answers during his interviews. Because the State did not say that Selley would have been untruthful and Selley made similar comments in front of the jury, we conclude the State's objection was not improper.

*Closing Argument*

Selley argues that the State committed misconduct in several ways during its rebuttal closing argument, including denigrating defense counsel, mischaracterizing the evidence, vouching for the credibility of witnesses, and appealing to the jury's emotions. The State responds that its rebuttal was proper in all respects.

The prosecutor has "'wide latitude in making arguments to the jury and prosecutors are allowed to draw reasonable inferences from the evidence.'" State

---

[9] 4 RP (Oct. 28, 2014) at 575. The court sustained an objection to the question about the mother's credibility.

7

v. Fisher, 165 Wn.2d 727, 747, 202 P.3d 937 (2009) (quoting State v. Gregory, 158 Wn.2d 759, 860, 147 P.3d 1201 (2006), overruled by State v. W.R., 181 Wn.2d 757, 336 P.3d 1134 (2014)). But a "prosecutor must not impugn the role or integrity of defense counsel." Lindsay, 180 Wn.2d at 431-32. Similarly, [r]eferences to evidence outside of the record and bald appeals to passion and prejudice constitute misconduct. Fisher, 165 Wn.2d at 747.

This court reviews allegedly improper comments in the context of the entire argument. Fisher, 165 Wn.2d at 747. When the defendant objects at trial, he must show on appeal that the prosecutor's misconduct resulted in prejudice that had a substantial likelihood of affecting the jury's verdict. State v. Allen, 182 Wn.2d 364, 375, 341 P.3d 268 (2015). But, if the defendant fails to object to the misconduct at trial, he must show that "'the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice.'" Allen, 182 Wn.2d at 375 (quoting State v. Emery, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012)).

Here, the State said at the beginning of its rebuttal that it "must have sat through a completely different trial than defense."[10] The State immediately followed that comment with a reminder to the jury that the jurors were "the sole takers of what the facts are, and what [they] heard. What [counsel] argues is just [their] comments" and is not evidence.[11]

The State also stated that it had "heard the evidence far differently than the

---

[10] 22 RP (Dec. 9, 2014) at 3250.
[11] 22 RP (Dec. 9, 2014) at 3250.

8

defense did."[12] The State followed that comment by explaining the different ways of interpreting of a witness's testimony. In context with its cautions to the jury, neither of the State's comments indicating that it and the defense counsel viewed the evidence differently rose to the level of impugning defense counsel's integrity.

Moreover, Selley did not object to either of these statements, despite objecting repeatedly throughout the rebuttal. Thus, if we were to find that the statements rose to the level of misconduct, Selley would have to show that they were flagrant or ill-intentioned. He cannot meet that burden.

Selley argues next that the State misstated Dr. Clark's testimony. Selley objects to "[t]he prosecutor's failure to accurately and thoroughly summarize Dr. Clark's testimony."[13] The State's argument, that Southward's injuries were not consistent with a fall down the stairs, was faithful to Dr. Clark's testimony. When asked, "Why is a fall down the stairs not consistent for the cause of death in this case?," Dr. Clark responded by describing the type of injuries he would typically expect from a fall down the stairs, including that the "injuries are more likely to be more widely distributed during a fall down the stairs."[14] He contrasted those with Southward's injuries:

> These rib fractures were all in the same area. The liver lacerations were all in that same area. The bowel perforation was in that same area, and partly for that reason I think it's unlikely that a fall down the stairs caused any of this.
> I can't exclude the possibility that a fall down the stairs may have caused rib fractures, conceivably could have caused a liver laceration. I think it's very unlikely it caused a bowel perforation.[15]

---

[12] 22 RP (Dec. 9, 2014) at 3250.
[13] Br. of Appellant at 29-30.
[14] 16 RP (Nov. 19, 2014) at 2432.
[15] 16 RP (Nov. 19, 2014) at 2432-33.

Therefore, we conclude that the State's characterization of Dr. Clark's testimony during rebuttal was not improper.

Selley argues that the State improperly vouched for Dr. Clark's testimony. We disagree. The State listed Dr. Clark's credentials and told the jury it should not disregard his opinion, but had to decide whether Dr. Clark's opinion that Southward's death was from an assault, not a fall down the stairs, was credible. The State did not vouch for Dr. Clark's credibility by calling the jury's attention to his credentials. The argument was not improper.

Selley argues that the State misused Dr. Clark's determination of the cause of death. The State argued that Dr. Clark ruled that Southward's death was a homicide and that the cause was being beaten to death. This was the cause of death that Dr. Clark provided for Southward's death certificate. The State described Dr. Clark as "an interface between the legal community and the medical community."[16] It was not improper for the State to rely on Dr. Clark's expert medical opinion, so long as Dr. Clark did not provide any opinion on the legal weight of his determination. See, e.g., State v. Jones, 59 Wn. App. 744, 751, 801 P.2d 263 (1990).

Selley maintains that the State misrepresented the evidence by stating that Selley's testimony was the only evidence that Southward had fallen down the stairs. The State referred to Selley's account of Southward's fall down the stairs, specifically that he found Southward sitting at the base of the stairs, to show that there was no evidence of a "significant fall" down the stairs.[17] The prosecutor said,

---

[16] 22 RP (Dec. 9, 2014) at 3253.
[17] 22 RP (Dec. 9, 2014) at 3252.

10

"We have evidence, provided only by the Defendant, that she fell, was sitting at the base of the stairs."[18] Selley was the only one who said that Southward "was down by the landing," which was at the bottom of the stairs, and that Southward was "sitting on the step."[19]

Selley says this was a misstatement because one of the doctors remembered hearing that a fall down the stairs was part of Southward's medical history. But that doctor's testimony did not include that Southward was sitting at the bottom of the steps following the fall. Therefore, it was not inaccurate to say that Selley provided the only evidence of how Southward was acting after her fall.

Finally, Selley argues that the State improperly attempted to inflame the prejudice of the jury by showing them pictures of Southward's injuries and saying "that's what getting the shit beat out of you looks like, and the Defendant is the one that did that to Kate."[20] Selley immediately objected, and the trial court told the State to "[d]ial it back just a little bit."[21]

The most provocative language from the State's comment came from a quote from Selley himself. Selley told one of the paramedics who responded to his 911 call, "It looks like I beat the shit out of her."[22] Although somewhat inflammatory, this quote served to remind the jury that even Selley admitted that it looked like Southward was the victim of an assault. Combined with the trial court's admonition that the State should "[d]ial it back," this statement was not improper.[23]

---

[18] 22 RP (Dec. 9, 2014) at 3252.
[19] 20 RP (Dec. 4, 2014) at 2931, 2933.
[20] 22 RP (Dec. 9, 2014) at 3256.
[21] 22 RP (Dec. 9, 2014) at 3256.
[22] 2 RP (Oct. 23, 2014) at 200.
[23] 22 RP (Dec. 9, 2014) at 3256.

We conclude that the State did not commit prosecutorial misconduct throughout the trial, including during its rebuttal argument.

### Right to Present a Defense

Selley contends the trial court denied him his right to present a defense when it excluded evidence that Southward was an alcoholic. Specifically, Selley argues that excluding this evidence denied him his right to impeach Southward's hearsay statements about times when Selley had assaulted her.[24] The trial court allowed Selley to impeach Southward's statements with evidence that she was intoxicated at the specific times she made those statements, but properly excluded testimony about Southward's history of alcoholism because it was prejudicial and irrelevant.

The Sixth Amendment provides criminal defendants with the right to present a defense, which includes the right to cross-examine adverse witnesses. State v. Darden, 145 Wn.2d 612, 620, 41 P.3d 1189 (2002). Courts use a "three-prong approach" for determining whether they must admit a criminal defendant's offered evidence. Darden, 145 Wn.2d at 622.

> First, the evidence must be of at least minimal relevance. Second, if relevant, the burden is on the State to show the evidence is so prejudicial as to disrupt the fairness of the fact-finding process at trial. Finally, the State's interest to exclude prejudicial evidence must be balanced against the defendant's need for the information sought, and only if the State's interest outweighs the defendant's need can otherwise relevant information be withheld.

---

[24] In his reply brief, Selley argues that evidence of Southward's alcoholism was relevant because medical evidence showed that it impacted her injuries. Selley made this point in his assignments of error in his opening brief, but failed to support that assignment of error with argument. We decline to consider the argument. It was unsupported in the opening brief and untimely in the reply brief. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

Darden, 145 Wn.2d at 622. No State interest is compelling enough to warrant excluding evidence with "high probative value." State v. Jones, 168 Wn.2d 713, 721, 230 P.3d 576 (2010).

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. Evidence of intoxication is admissible "to impeach the credibility of a witness if there is a showing that the witness was using or was influenced by the drugs at the time of the occurrence which is the subject of the testimony." State v. Russell, 125 Wn.2d 24, 83, 882 P.2d 747 (1994). But, because of society's prejudice against addicts, evidence that a witness is an addict is inadmissible without proof that the addiction would make the witness less credible. State v. Renneberg, 83 Wn.2d 735, 737, 522 P.2d 835 (1974). The court in Renneberg did not explicitly mention alcoholism as a type of drug addiction, but secondary sources interpret Rennenberg to apply to alcohol addiction. See 5A KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 607.12, at 409 (6th ed. 2016).

This court reviews claimed violations of the Sixth Amendment right to present a defense de novo. Jones, 168 Wn.2d at 719.

The trial court allowed Selley to present evidence that Southward was intoxicated on the specific occasions that she told people Selley had abused her. But the court would not allow Selley to introduce evidence that Southward was an alcoholic. Selley argues that Southward's alcoholism was relevant to "explain Southward's inconsistent statements by showing that her memory likely was

13

clouded by her alcoholism."[25] Selley does not cite any evidence that Southward's alcoholism had an impact on her general credibility. Without that evidence, Southward's alcoholism was not relevant. We conclude that the trial court properly excluded this evidence and that the exclusion did not deny Selley a right to present a defense.

### Jury Instruction

Selley argues that the trial court erred by rejecting his proposed jury instruction on the lack of duty to seek medical care. Because Selley's proposed instruction was misleading and did not apply to the crime charged, we disagree.

Jury instructions are sufficient if they allow a party to argue its theory of the case, properly inform the jury of the applicable law, and are supported by substantial evidence. State v. Hathaway, 161 Wn. App. 634, 647, 251 P.3d 253, (2011). The trial court may refuse to give a party's proposed specific instruction if a general instruction "adequately explains the law" and allows that party to argue its theory of the case. Hathaway, 161 Wn. App. at 647.

This court reviews a trial court's choice of jury instructions for an abuse of discretion. Hathaway, 161 Wn. App at 647.

Here, the State charged Selley with felony murder based on assault, which is a method of murder in the second degree. The court accurately instructed the jury on the elements of assault, including that the defendant had to intentionally touch or strike the victim in a manner that is harmful or offensive.

A defendant is guilty of criminal mistreatment if he assumes the

---

[25] Br. of Appellant at 37.

responsibility to provide a person with the basic necessities of life and causes great bodily harm to that person by recklessly withholding those necessities. RCW 9A.42.020. But the defendant is not guilty of criminal mistreatment if he fails to provide basic necessities to a person who has refused them. See State v. Koch, 157 Wn. App. 20, 36-37, 237 P.3d 287 (2010).

Selley proposed an instruction combining the definition of intent with an assault defense for criminal mistreatment charges:

> A person acts with intent or intentionally when acting with the objective or purpose to accomplish a result that constitutes a crime. However, a person has a right to privacy and to be free from bodily invasion and a defendant is not obligated to disregard another adult's wishes by forcing on him/her unwanted medical care.[26]

This instruction could have confused jurors about the basis of Selley's liability. The assault charges are based on Selley's affirmative conduct, not Selley's failure to act, which could be the basis for a criminal mistreatment charge.

Moreover, Selley does not identify what theory he was unable to argue because the trial court rejected his instruction. Selley presented evidence, primarily his own testimony, that Southward chose not to receive medical care. He argued in his closing that Southward's injuries were caused by accidental falls made worse by her decision not to seek treatment.

Selley argues the instruction was necessary to rebut the State's argument "that Selley had the duty to seek medical care for Southward and that his failure to do so caused her death."[27] The State did not make that argument. It argued that the gravity of Southward's injuries was obvious and that Selley did not call 911

---

[26] Clerk's Papers at 183.
[27] Br. of Appellant at 54.

15

because he was hoping Southward would get better, not because Southward told him she was fine. Selley has not shown that he needed the rejected instruction in order to argue his theory of the case.

The trial court did not err by declining to give a potentially misleading instruction that Selley did not need.

### Sufficiency

Selley challenges the sufficiency of the evidence supporting his conviction and the aggravating factor on which the court imposed an exceptional sentence. Sufficient evidence supports both the aggravating factor and the underlying conviction.

The State must prove all elements of a charged crime beyond a reasonable doubt. State v. Larson, 184 Wn.2d 843, 854, 365 P.3d 740 (2015). When a criminal defendant challenges the sufficiency of the evidence underlying his conviction, this court determines whether, viewing the evidence in the light most favorable to the State, "any rational trier of fact could have found guilt beyond a reasonable doubt." State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). The reviewing court accepts as true all the State's evidence and any inferences that a jury could reasonably have drawn from it. Salinas, 119 Wn.2d at 201.

The trier of fact makes credibility decisions. State v. Camarillo, 115 Wn.2d 60, 71, 794 P.2d 850 (1990). The appellate court cannot review those decisions. Camarillo, 115 Wn.2d at 71.

This standard applies to Selley's challenges to the underlying conviction and to the aggravating factor.

*Felony Murder in the Second Degree*

Selley argues that the State did not meet its burden of proving that Southward's injuries resulted from an assault by Selley rather than a series of accidents. Specifically, he argues that the State's medical experts could not testify to a degree of reasonable medical certainty that a series of falls could not have caused Southward's injuries and, therefore, there was insufficient proof that Selley had assaulted Southward. The State argues that Selley distorts the medical testimony and that there was sufficient proof that Southward's injuries were not caused by the accidents Selley described. We agree with the State.

To prove second degree felony murder based on an assault, the State had to show that Selley committed an assault and, in the course of and in furtherance of such crime or in immediate flight therefrom, he caused the death of Southward, who was not a participant. RCW 9A.32.050(1)(b).

Selley does not suggest that there is any doubt that Southward died as a result of the injuries she sustained between September 23, and September 27, 2012.[28] But he argues that there is insufficient evidence that the injuries were the product of an assault rather than an accident. Selley essentially argues that the State's evidence on the mechanism of injury must rise to the level of a reasonable medical certainty.

---

[28] Below, Selley argued that, even if the jury found that he had assaulted Southward, the assault did not proximately cause Southward's death because her choice not to seek medical attention was an intervening cause. He does not repeat that argument on appeal.

17

None of the authority Selley relies on supports his position. He cites two cases that address the admissibility of medical testimony, not whether medical testimony was sufficient to support a conviction. State v. Martin, 14 Wn. App. 74, 76-77, 538 P.2d 873 (1975) (the specific requirements for admitting evidence of a diminished capacity defense); State v. Terry, 10 Wn. App. 874, 884, 520 P.2d 1397 (1974) (admissibility of medical expert testimony on cause of death). A third case relied on by Selley examined whether there was evidence that the injuries a decedent sustained, in an accident caused by the defendant, proximately caused a decedent's mental illness. Orcutt v. Spokane County, 58 Wn.2d 846, 853, 364 P.2d 1102 (1961). The court held that

> in actions in which recovery is sought for physical conditions allegedly resulting from injuries inflicted by the wrongful act of the defendant, the plaintiff must produce evidence to establish, with reasonable certainty, a causal relationship between the injury and the subsequent condition, so that the jury will not be indulging in speculation and conjecture in passing upon this issue.

Orcutt, 58 Wn.2d at 853.

The present case is distinguishable because there was no question whether Southward's injuries caused her death. The question was what caused her injuries, and Selley does not cite any authority for his proposition that the answer to that question must be supported by testimony rising to the level of reasonable medical certainty. The lack of that medical evidence was the only ground on which Selley challenged the sufficiency of the State's proof. Because that evidence was not required, his challenge fails.

*Domestic Violence Aggravating Factor*

Selley argues that there is insufficient evidence to support the jury's findings on the domestic violence aggravating factor because the State did not establish an "ongoing pattern" of abuse. The State responds that Selley is using the wrong definition of "pattern," and that it provided sufficient evidence of acts of domestic violence to support the jury's findings under the correct definition. We agree with the State.

"The purpose of statutory interpretation is to determine and carry out the intent of the legislature." State v. Sweat, 180 Wn.2d 156, 159, 322 P.3d 1213 (2014). If the words of a statute are clear, the inquiry ends. Sweat, 180 Wn.2d at 159. The court will not interpret a statute in a way that renders some of the statute superfluous. State v. J.P., 149 Wn.2d 444, 450, 69 P.3d 318 (2003).

This court reviews questions of statutory interpretation de novo. Sweat, 180 Wn.2d at 159.

The State alleged that Selley's assault on Southward was a crime of domestic violence and was part of "an ongoing pattern" of physical abuse of a victim "manifested by multiple incidents over a prolonged period of time." RCW 9.94A.535(3)(h)(i). Selley urges this court to adopt the definition of "pattern" used in State v. Russell, 69 Wn. App. 237, 247, 848 P.2d 743 (1993). In that homicide by abuse case, the court cited a dictionary definition of "pattern" as "'a regular, mainly unvarying way of acting or doing.'" Russell, 69 Wn. App. at 247 (quoting WEBSTER'S NEW WORLD DICTIONARY 1042, 1117 (1976)).

But here, the statute unambiguously states that "multiple incidents over a prolonged period of time" are the appropriate form of proof of an ongoing pattern of abuse. RCW 9.94A.535(3)(h)(i). Requiring the State to prove the pattern in a different way would render this language superfluous. Selley's interpretation of the statute, as requiring something more than multiple acts of domestic violence, is unpersuasive.

Selley also challenges the sufficiency of the evidence to support each of the alleged acts of domestic violence. There is sufficient evidence from which a jury could believe each of these acts occurred.

Kristin Howard, a nurse practioner, testified that Southward had come to her for treatment in December 2010. She stated that Southward told her that "she was repeatedly kicked and/or punched in the chest by her significant other."[29]

Cheryl Larriva, Selley's neighbor, testified that Southward had come to her door a little after midnight during the summer of 2011. Southward had a bloody nose. Southward told Cheryl that her boyfriend had hit her.

Gary Robinson, Selley's former coworker, testified that Selley told him that he had beaten up Southward in October 2011.[30] Selley had left Southward at home on his couch to recover.

Selley points out inconsistencies in various witnesses' testimony about these incidents, arguing that "it is impossible to know which of these wildly

---

[29] 11 RP (Nov. 10, 2014) at 1651.
[30] Selley argues that, because the only evidence of this act is his own testimony, it does not satisfy the corpus delecti rule. That rule does not apply to aggravating factors. State v. Finch, 137 Wn.2d 792, 838-39, 975 P.2d 967 (1999).

inconsistent versions the jury found to have occurred."[31] This court does not have to determine exactly what the jury believed. It is enough that a jury could reasonably believe that the assault that led to Southward's death was part of an ongoing pattern of physical abuse. The State offered evidence of three incidents of abuse taking place over a two-year span before Southward's death. The State met its burden to show an ongoing pattern of domestic violence by providing evidence of multiple incidents of domestic violence occurring over a prolonged period of time.

### Statement of Additional Grounds for Review

Selley raises four arguments in his statement of additional grounds. None merit reversal. First, he argues that the trial court erred by excluding evidence of Southward's alcoholism. Selley argues that Southward's alcoholism was relevant because she had severely injured herself while intoxicated in the past. The evidence of these earlier injuries, allegedly contained in medical records in the possession of the State, does not appear to be in the record on appeal. We cannot review this alleged error. RAP 10.10(c).

Second, Selley argues that the trial court relied on letters from Southward's family at sentencing. This is not improper. RCW 9.94A.500(1); CrR 7.1(d).

Third, Selley argues that he was denied his right to present witnesses, but does not mention which witnesses he might have been prevented from having testify. This is not sufficient to inform the court of the nature of the alleged error. RAP 10.10(c).

---

[31] Br. of Appellant at 49.

Finally, Selley argues that the State committed misconduct when the prosecutor indicated which way she wanted witnesses to respond to questions by shaking or nodding her head. This was raised a few times during trial and the record does not support the assertion that the prosecutor made any inappropriate signals to witnesses.[32]

Affirmed.

Trickey, ACJ

WE CONCUR:

Schindler, J.

Cox, J.

---

[32] Selley claims this was brought to the attention of the trial court at least three times, but a cursory examination of the record reveals only two. Both times the court asked numerous people present in the courtroom if they had observed the prosecutor shaking her head or nodding her head. No one had.